On September 11, 1944, plaintiff filed this suit wherein he alleges that the defendant, operating under the trade name of Wavely Creamery, is indebted to him in the sum of $1,396.34, changed to the amount of $1,323.75 by the evidence, for a balance due on milk furnished by plaintiff to defendant during the period October, 1941, to October, 1942, as alleged in the petition, and in reality, the period from April 1, 1942, to August 4, 1942. Plaintiff's case is predicated on the general allegation that it was agreed between him and defendant that this milk was received by defendant at the customary price usually charged at the time, and was well worth the price agreed upon between plaintiff and defendant, and on the specific allegation that on July 5, 1942, the defendant rendered a statement to petitioner showing a sum total net balance of $1,396.34 due by defendant. It is shown by the testimony of plaintiff that subsequent to this statement of July 5, 1942, and up to August 4, 1942, at which time plaintiff ceased to furnish milk to defendant, this balance of $1,396.34, by payments from defendant, was reduced to $1,323.75.
The defense is to the effect that in October, 1941, an oral agreement was entered into between the plaintiff and defendant whereby plaintiff was to furnish milk to defendant at the rate of 25¢ per gallon until April 1, 1942, and that the rate from April 1st to October 1st would then be reduced to 20¢ per gallon; that the payments made by defendant between April 1, 1942, and August 4, 1942, were in excess of the 20¢ rate to the amount of $313.71. Defendant makes reconventional demand for that sum, plus an additional $15,000, the latter amount being for alleged damages for coercion, repression, putting in great fear of business and actual loss in property, contending that the latter item of damage was caused by plaintiff's threat not to furnish milk at the agreed price of 20¢. *Page 127 
On trial of the case, both the main demand and the reconventional demand were rejected and the suit was dismissed at plaintiff's costs. Plaintiff has appealed.
The most important element of the case appears to be the statement allegedly given to plaintiff showing the balance due as of July 5, 1942, marked "Exhibit P-1." The trial judge in his written reasons for judgment states: "If the statement offered in evidence and identified as 'P-1,' is to be taken as an acknowledgement of indebtedness on the part of defendant, then, in such case, plaintiff should have judgment." The trial judge then goes on to say that the plaintiff has failed to assume the burden of proof in establishing the statement as an acknowledgment of indebtedness for the reasons that the statement showed a balance due as of May 3, 1942, of $1,362.55, and apparently the trial judge believes that this balance was furnished to defendant's wife and bookkeeper by plaintiff as a starting point for the alleged statement of indebtedness, and for the further reason that he was not satisfied as to how this statement was made and procured.
The plaintiff testified that the defendant had been falling behind on his account, and that in order to secure settlement thereof, he attempted to secure an agreement as to the account and that this particular statement was the result of such attempt; that the statement was procured by his bookkeeper, Miss Benton, from Mrs. Reynolds, the bookkeeper for Mr. Reynolds, and that the statement reflected a smaller amount than shown by his records, but that he accepted it as correct, and thereafter proceeded to apply credits when payments were made by defendant. The trial judge did not seem to believe that the statement was sufficiently corroborated, because, as he states: "When Miss Benton, now Mrs. Gardner, appeared as a witness for plaintiff, she failed to corroborate plaintiff or make clear that the statement was furnished by Mrs. Reynolds as a true extract from her books showing an indebtedness to plaintiff. There appears no good reason why Mrs. Gardner should not have testified to the circumstances of the matter and this is particularly true as, according to plaintiff, she was fully cognizant of the value of the statement."
Our reading of her testimony leaves us without doubt that she did not care to testify in this case. She was very obstinate and evasive and pretended to have such a lack of memory as to have forgotten the amount of wages she was earning, whether the employer paid her her full wages, the time she worked for him, and even whether or not plaintiff furnished milk to defendant at all, only recognizing her handwriting, and even doubting that. The testimony of the defendant and Mrs. Reynolds shows clearly that Miss Benton was working for the plaintiff, and that as a matter of fact she oftentimes received payments for milk sold to defendant and signed receipts therefor. Plaintiff, evidently, offered her as a witness to prevent the presumption that she would have testified against him.
The testimony of plaintiff Harang with reference to the statement could not be corroborated by Miss Benton because she, in effect, refused to testify, but it is corroborated to a large extent by the testimony of defendant and his bookkeeper-wife and by at least one circumstance. The defendant himself, in his testimony, clearly admits that he knew plaintiff expected 25¢ per gallon for his milk during the period in question, April 1st to August 4, 1942, and he clearly admits that payments were made to plaintiff on that basis; but he contends that this was done to try to get around plaintiff's failure to furnish milk at 20¢ per gallon, as per their alleged oral agreement; that plaintiff furnished him 90% of his milk, and that in effect, unless he was able to make plaintiff believe that he would pay him 25¢ per gallon, plaintiff would have sold his milk elsewhere and he would have been forced out of business.
Mrs. Reynolds admits that she prepared the alleged statement, but she contends that it was done on the insistence of plaintiff and on figures furnished by him, and that it took her some three occasions to finally give the statement to plaintiff in the form acceptable to him; that the final statement took her two days to prepare. From her testimony, too, it is clearly shown that plaintiff expected 25¢ per gallon, and that the statement was made on that basis and payments for milk, during the period in dispute, were made on that basis. It is hard to believe that plaintiff furnished the figures for the statement, because the milk, under their arrangement, was delivered to the defendant, and defendant or his employees then gave a receipt for the number of gallons, and at the end of each week, made settlement for the total gallonage. Consequently defendant's books reflected the total gallonage and his records reflected *Page 128 
the payments made and the payments due. It is a significant circumstance that this particular statement, though not signed, is made on the letterhead of defendant and was made in defendant's office. It would seem that if the statement was based on figures furnished by plaintiff, it would have been made at the plaintiff's office. It is significant also that under date of July 20, 1942, the defendant wrote a letter to plaintiff offering to sell back the creamery for "$1,000.00, plus the amount of milk for which I owe you." Counsel for defendant contends that the amount of milk mentioned in that letter was merely the current weekly account, but be that as it may, the letter indicated the defendant was not doing so well and was trying to settle up with the plaintiff.
The testimony and circumstances set forth indicate that the statement in question, "Exhibit P-1," is an acknowledgment of indebtedness on the part of defendant, and that the defense that the price should have been 20¢ instead of 25¢ is an afterthought to get around this acknowledgment of indebtedness. The statement was undoubtedly prepared by his agent, Mrs. Reynolds, his wife, and it seems unreasonable to suppose that she would have allowed the plaintiff to control her to the extent of making a detailed statement of that kind for his interest and against the interest of her husband. As to whether or not plaintiff, Harang, violated a prior agreement to furnish the milk at 20¢ does not seem material to the issue in this case, because, from the testimony of defendant himself, it is clear that the debt alleged herein is based on a price of 25¢, which he knew existed and which he knew he had to pay at the time of payment, or else the milk would not have been furnished to him by plaintiff. It was discontinued August 4th for the reason that defendant was unable to pay this back debt and to continue paying the 25¢ rate.
We are therefore of the firm opinion that plaintiff has fully borne the burden of proof and that the record discloses an indebtedness due plaintiff by defendant in the sum of $1,323.75 on August 4, 1942, and for which plaintiff is entitled to a judgment.
For these reasons assigned, it is ordered that the judgment appealed from is reversed, annulled and set aside, and it is now ordered that there be judgment in favor of plaintiff, Edmond L. Harang, and against the defendant, M.C. Reynolds, in the full and just sum of Thirteen Hundred Twenty-Three and 75/100 (1323.75) Dollars, with legal interest thereon from August 4, 1942, until paid, and all costs.
Judgment reversed and rendered.